Good morning, Your Honor. Evan Marshall for appellant Sharla Tipton. One thing that is absolutely clear in this case is that Mike Zimmer, or Mike Turner, was not a fictitious defendant. He was not somebody who was dragged in simply for purposes of trying to defeat diversity. Why was he never served? I think the reason he was never served, and I'm speculating a little here, is because this case got removed to federal court from state court. And once it got removed, what we were doing is trying to get it back into state court. And had it gone back to state court, we would have, at that point, served him. At what point did you learn his identity? His actual name? When we got the medical records from Zimmer, in which it discloses that Mike Turner is the individual who spoke with Dr. Kavan for about this particular device. So, at what point was that in relation to the removal? I can't tell you off the top of my head. Was it after the removal or before the removal? I believe, I believe. Were you trial counsel? No, I wasn't. But I think I do know the answer to that question. It was part of the Rule 25 disclosure. They turned over medical records which, in fact, contained Mike Turner's real name and his real consultation with Dr. Kavan for. So, it would have been just after the case was removed, I guess. Boy, if you wanted to fight that fraudulent joinder issue, it sure would have been a good idea to serve him. Well, it probably would have been a good idea. On the other hand, given the burden of proof on a motion of remand, the burden of proof of showing fraudulent joinder, you would have thought that Zimmer would have produced a declaration from their employee, Mike, attesting that he didn't have anything to do with this. Well, but hold on, counsel. I mean, the point is your client filed a lawsuit and included Mike in the lawsuit, and yet, as far as I can tell, took absolutely no steps to serve Mike. And under Rule 4M, if a defendant is not served within 90 days after the complaint is filed, the court must dismiss the action without prejudice against that defendant. That never happened here. Well, I think Rule 4M would come into play if the removal were valid. On the other hand, if the removal was not valid, then the case should have been remanded and the State court should have followed its rules. But I would think that in determining whether the removal was valid or not, it all brings into the question of who should be in the case. And if a party – I mean, again, they're arguing fraudulent joinder, and that's a tough burden. You're right. That is a tough burden, and I'm sure we're going to have some tough questions for them. But kind of first principles here, you guys – this guy's included in the lawsuit, and maybe I'm not suggesting he shouldn't have been, but no effort is taken to actually include him in the lawsuit. I think we've cited authority in the briefs to the effect that service is not really on the defendant if the defendant has been validly joined in service on them or their actual appearance in the action is not critical to the question of whether removal was valid or really to the motion for remand. But all I can say is as a factual matter, our position was we should get this back into State court, and then we'll proceed against everybody. So why not – I mean, this is kind of an odd case because Mike was never served, but as far as I can tell, the other side didn't really make an issue of that either. Would it make sense for us simply to remand this case to – listen closely, I'm not saying State court right away – to the district court and to conduct a hearing to determine whether under 4M service was either – didn't happen the right way, if that caused for dismissal? Because I don't think anyone's ever analyzed the question, this 4M question, and we're not in a position to conduct a factual hearing to do that, and it seems to me that could be crucial to this whole case. Well, I would just disagree. Again, based upon the authorities that say the issue of a fraudulent joinder or misjoinder or whatever kind of wrongful joinder you have doesn't turn upon whether the individual has been served or not. What case is that? You know, I can't tell you as I stand here. I pray this got miscalculated and I arrived here without my briefs, but I know it has been – it is in the briefs. But we're really putting the cart before the horse here, and I think more particularly what happened here is the district court decided that notwithstanding that there's a real person with real involvement in the case – Well, maybe, maybe not. I guess we don't know. Well, we know from – we know from – Zimmer has never denied that there was a real Mike Turner and that he was their agent, the sales agent. And we know from Dr. Kavenfar's declaration that there was a real person and that he came to him and consulted Dr. Kavenfar about using – about the use of this particular device. So I don't think there's any question about that at this point in time in terms of the reality of Mike Turner and his existence. What happened here really is that the motion to remand became sort of an ersatz summary judgment because the court, notwithstanding that there was somebody out there who was definitely involved and that Dr. Kavenfar relied upon him, the court decided that because there were these two parts and one of the parts didn't have a manufacturing defect and the other one did, that I guess there was no causal relationship. So in effect, that was an adjudication on the merits. The district judge disagreed with the surgeon on this. And when there's a disagreement between the surgeon and the district judge, I think on matters of medical decision, which is what this case depends upon, the question of whether the surgeon would have proceeded as he did had he – had the issue of defect been fully disclosed, the tie goes to the surgeon. So that's another reason why this was really defective because in effect it became, as I said, an ersatz summary judgment and it – and the decision of the district court to remand really depends upon an adjudication or her view of a particular causation issue. Unless the court has any further questions. Why don't we hear from the other side? And you've saved quite a bit of time. Good morning. May it please the court. Tarifa Ladin on behalf of Zimmer, Inc., Zimmer Holdings, Inc., and Zimmer Surgical, Inc. I'd like to begin by just answering a couple of the court's questions in terms of timing, just to set the stage a little bit here. The notice of removal was filed on June 30th of 2015. No remand motion was filed. So the notion that the – Ms. Tipton was fighting to stay in state court and that's why Turner was never served is simply incorrect. The documents that Zimmer provided in connection with its Rule 26 disclosures, which provided the full name of Mike Turner, happened on December 10th, 2015. Okay? So a couple months after the notice of removal. The motion to remand was filed 11 months after the removal. Only when Ms. Tipton saw Zimmer's summary judgment motion with credible expert witness testimony that you need to defeat these sorts of prescription medical implantable devices in product liability claims, Ms. Tipton admittedly had no expert witness willing to opine on her behalf on any theory of defect that was admitted to us in a meet and confer process that is in the record, and at that point decided to remand the case. And that's when the motion to remand was filed. The motion to remand was filed after our motion for summary judgment was filed by almost a month. And when the judge ruled on our motion for summary judgment, denied the remand motion in a very thorough, thoughtful order. The judge took the jurisdictional issue very seriously. Plaintiff filed a motion for reconsideration. Again, in another thoughtful, you know, fully thought through, well thought out opinion, the judge denied that motion. Plaintiff then filed a motion for a new trial, which the judge deemed a second motion for reconsideration. And that is when we saw the doctor declaration. I'd like to clear up one issue on Dr. Kaivinfar's declaration and this issue that the court disagreed with the surgeon. The recall issue is very simple. First of all, this was a 2010 recall of one lot of 192 components. This was publicly available since then. It ended several months later in 2011. Plaintiff had every ability to go find that recall notice before taking Dr. Kaivinfar's deposition, which happened 7 months before this declaration that accompanied the motion for a new trial. Did not do so. And most importantly, the district court found a finding of fact that this recall, this 6-year prior one lot recall of 192 components, had nothing to do with the actual implant that Ms. Tipton received. Okay? The femoral component that was the same type of product, admittedly, but it was a completely different lot. And the femoral component that was implanted in Ms. Tipton, as far as I know, is still in her today. And I know for certain at the time of the motion for summary judgment hearing was in her. So if you read the Dr. Kaivinfar declaration carefully, particularly paragraphs 3, 5, and 8, you see that he was given bad information. He's thinking, when he's writing this declaration, oh, I would have done something differently. He's thinking, well, the product that I put into my patient was recalled. And the district court found a finding of fact that not to be the case. So the district court in no way was practicing medicine or second-guessing the doctor. She simply said, and I do want to read from this, the district court simply said, so individual defendant Turner cannot be held liable for failing to inform Dr. Kaivinfar of a recall when there was no relevant recall of which to inform Dr. Kaivinfar in the first place. So that's even if we're getting to the substance. All your argument makes perfectly good common sense. Having lived with questions of subject matter jurisdiction in the federal courts for most of my professional life, I have to say that not all of our jurisprudence in this area makes good common sense. The question is, at the time of removal, was the joinder of the then only first name Mike fraudulent? It was. And let me add, it was fraudulent at the time. But I'll tell you an interesting issue in this case. So, yes, it was fraudulent. Because. Before you get to the other issue, tell me why it's fraudulent. Because it seems to me that at that stage it is at least plausible that there's a cause of action against him. We know, just because we know these things, that when sophisticated medical devices are implanted, the representative of the company for whom the device is supplied consults with the doctors. We've got an allegation to that effect. This is perfectly plausible. We have no idea at this point what Mike might or might not have said. But I can't dismiss it out of hand as frivolous. Well, the district court actually looked at the allegations in the complaint and found that they were so scant against Defendant Turner. Well, yes, I know. Because the district judge in the position she found herself said, this is a crazy case that's gone on far too long and the slot I'm going to try to fit it into is fraudulent joinder. I'm sympathetic with the district judge. But as I look at the complaint at the time of removal, it does not strike me that it's fraudulent joinder. Fraudulent joinder doesn't mean you're necessarily going to win your cause of action against Mr. Mike. Well, I'll concede this. I'll concede this, Your Honor. If plaintiffs had filed a timely notice of remand, I think why we would have lost is because, admittedly,  And we took the position that there was a dodefendant. But timely, you see, that's, again, this is part of the nonsense of Federal jurisdiction. This is not your nonsense. It's the law's nonsense, that if it's a failure of subject matter jurisdiction, it can be raised at any time. Yes. And that's why I think the district court did the right thing. The district court, so putting aside the timeliness of the motion to remand or the timeliness of, you know, whether Zimmer put the fraudulent joinder argument in its notice  have this continuing obligation to assess whether they have subject matter jurisdiction of the case. And the court did so, and thoroughly, three times, and concluded that it did. Yeah, but what if she's wrong? I don't think she's wrong, and we can talk about that. But, you know, and I would say one thing that we haven't talked about yet is the CIHA Prado potential, right? This was not a holding in the case, but the discussion about the possible diversity exception to this general rule that subject matter jurisdiction, you know, can be looked at at any time. And I think if there's a poster child of a case for adopting the proposed diversity exception and that the CIHA Prado court discusses, it's this one. And I'd like to actually just go back to the basics for a second and look at a case that Ms. Tipton cites, which is the Muhammad case. And now, granted, that is a form defending case. But what they talk about in that case is that if you look back to when — this goes to the whole service issue — if you look back to when 1441b was amended to include the words, all parties properly joined and served, and I understand there was a split in the district courts and the circuits as to how strictly to construe that language, the court looked back and said, why was that language added? It was added to address a problem at the time of plaintiffs suing nondiverse defendants to stay in State court, you know, with no intention of actually pursuing a claim against them. And that was a problem that that language intended to address. Now, in the Muhammad case, the court said, defendants, you can't play gotcha, you can't play gamesmanship, you can't see a complaint on ECF and run in and remove before the plaintiffs have a meaningful chance to serve people. That's just not fair. That's what — nobody was thinking about that 40, 50 years ago when they amended the statute. But you also can't have gamesmanship on the plaintiff's part. And the exact concern that the 1441 amendment addressed is what we have in this case. The best evidence that there's no colorable claim against Mike Turner is the actions of plaintiff and her counsel in how she litigated this case. When we removed, no notice of remand. They litigated the case for 11 months. They noticed no deposition. They never served Turner. They never attempted to get any discovery from him. They didn't attempt to take a deposition of a Zimmer witness to talk about Mr. Turner. And in the three treating doctor depositions that Zimmer noticed, it became clear that none of them relied on Zimmer or on Turner for selection of the prosthetic device. That doesn't happen. That's the practice of medicine. The reps show up with the proper components and the proper sizes based on directions from the doctor. And it just — and Tipton's counsel was present at those depositions. She didn't ask, you know, a ton of questions about what did Mike tell you? What should Mike have told you? If Mike had told you about this recall, would you have, you know, done something differently? None of that was asked. The evidence in this case that there's no colorable claim against Mike Turner is the way that they litigated the case. I mean, surely if counsel thought they had a colorable claim against Mike Turner, wouldn't they have an obligation to their client to serve that defendant and pursue discovery against him? Let me just check my notes to see if there's anything else scintillating that I must discuss with you. But — Well, let me ask you this. What — I mean, obviously you would prefer that we affirm this case and be done with it. So I'm not asking — I would. I'm not asking you to back away from that at all. But — and I know you don't want this case going back to district court. So I'm not asking you to concede anything. But I did ask opposing counsel a question about the 4M question, which has really never been addressed by anyone in this Court. Assuming — and this is — I just say this as a resort. Assuming we're not going to go your way — Yep. And I haven't talked to Judge Fletcher or Judge Graber about this case, so I have no idea. What would be the — any issues with sending it back to the district court could make findings under 4M? I mean, the record is clear that he was not served ever. I mean, that's — I think that's conceded. Undisputed. But there's a good — there is a good cause exception to Rule 4M. And I don't think any findings have been made. Clearly, that would not be my preference. But I would have a high degree of confidence that they would not be able to put forward any good-faith reason why he wasn't served. I mean, they knew — they knew — they knew who he was. They could have served us with discovery immediately and said, who is Mike Turner? Give us these documents. We gave them documents in a timely fashion that gave them his name. I do want to make one clarification on something that counsel said, though. And this might not be in the record, but it's actually just an important factual thing. He's not our employee. Okay? Mike Turner is not a Zimmer employee. Okay? He's a sales rep who works for a distributor. Okay? So it's not — I just wanted to clarify that. But if the district court were to do that and the district court were to come back and say what you say — what you think it's going to say, and say, look, there's no excuse here for what happened here, that defendant is dismissed under Rule 4M, then I think you have what you want in this case. I'm trying, candidly, to think about how that works out procedurally. I guess our summary judgment motion just stands at that point. Because you — the problem of the lack of diverse parties would be gone, and under Caterpillar, we can still implement that judgment. Yeah. Anyway — Again, that would not be my preference. Understood. I think that the record establishes, you know — You've made it very clear what you — what you want to have happen, which is good, because sometimes lawyers come up here and they argue and you have no idea what they want. You've made it very clear what you want in this case. I do. I do. I feel strongly about it. And I guess the only thing that I would — I would just point out in terms of whether there's even any remote, like, chance of a culpable claim against Turner, putting aside the conduct of how this case was litigated by the other side, is just I would reiterate the district — the district court's very thoughtful order that that declaration from the doctor, which is the only thing that they can have, that and the recall. That's the only piece of evidence they can point to in — in rebuttals of evidence that we have establishing that he had really no connection to the case, per the three doctors who, you know, treated this patient, is that the declaration was beyond untimely under any conceivable interpretation of Rule 59 or Local Rule 7-18. But the district court, in an abundance of caution, went and looked at it anyway, right, and interpreted — she said it was untimely, for sure, but then went and said, you know, this is — this is based on a recall that didn't exist, which I — you know, and I made a finding of fact on that point. So, you know, we never got to depose him on that. It's really for neither here nor there. But unless — unless the panel has any other questions, I'll — Roberts. I do not. Okay. Thank you. Mr. Marshall, you saved some time. Just briefly, two points. One, if you look at the complaint, this is not a complaint where the guy's name is just thrown in. It has some specific allegations. If you look at the petition for remand, there's nothing at all about — comparable to what you heard from counsel. There's nothing about Mike Turner being unrelated to this. There's no explanation as to — as to really why he's not a validly named defendant. And so they didn't — so while they fault plaintiff for not joining him or not litigating the case against him, they had — they brought this case to the district court without making a case for bringing it to the district court. I'm having trouble fitting this into the sort of the prescribed boxes that the jurisprudence gives us. But it does strike me that there's a commonsensical argument that if you had thought that there was any serious possibility of liability for — against Mike, that you would have served. Well — You would have tried to bring him into the case. My best evidence here is Dr. Kaven's FAR declaration. Counsel refers to the district court's ruling about relevance. And they say this isn't relevant because the defect is in some other lot. But relevance in this case is in the mind of the medical decision maker. You know, I'm making a different point. And that is, this case is going along. You're doing discovery. You're interviewing doctors. You've gotten Mike, whose name you now know. And you display absolutely no interest in Mike until it looks as though, whoops, this summary judgment is going to be a tough one. And all of a sudden, we want a remand. That doesn't sound like Mike was a serious defendant. Well, I would just say that there is evidence that he was a serious defendant in their own records. And from Dr. Kaven's FAR. Counsel, that's not what Judge Fletcher is saying. He's saying it may be as a factual matter he was an integral part of it. But what steps did your client take to make him part of this case? Well, we named him in the complaint. Did you ever take any – were there any actions at all? You couldn't find the guy? He moved to a foreign country? I mean, what's going on here? Frankly, I can't answer that question. I wasn't involved in that aspect of the case. But as we are, I don't need to tell you that these determinations are made at the outset, at the time of remand, rather than later on based upon afterthought. Now, I can say this, and I think realistically, you know, I really expected to get money out of Mike Zimmer or Mike Turner or whoever it is, you know, who's the deep pockets here in this kind of case. And you know that having him in the case isn't really going to add much to it because, after all, if Dr. Kaven FAR comes in at trial and testifies, Mike told me this, that, or the other thing, well, that's good enough to show the causal issue, causal relationship between not being told. And that was the gist of the case against Mike Turner and against Zimmer, not being told that there's a problem, that there's manufacturing problems with these kinds of artifacts. So there's a, you know, a realistic problem. Sometimes people are liable and you don't bring them in because it isn't, because you're going after somebody else. Okay. Thank you. Thank both sides for their arguments. Tipton v. Zimmer, submitted for decision.
judges: Graber, W. Fletcher, Owens